1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MICHELLE BOGUE,

                             Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

                            Defendant.

3:14-cv-000221-HDM-WGC

**REPORT & RECOMMENDATION OF
U.S. MAGISTRATE JUDGE**

12

13

14

15

16

17

       This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.§ 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff Michelle Bogue's Motion for Reversal and/or Remand. (Doc. # 15.)[1] The Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's Motion for Reversal. (Docs. # 18/19.)[2] Plaintiff filed a reply. (Doc. # 20.)

18

19

       After a thorough review, the court recommends that Plaintiff's motion be denied and that the Commissioner's cross-motion be granted and that the Commissioner's decision be affirmed.

20

### I. BACKGROUND

21

22

23

24

25

26

       On December 9, 2010, Plaintiff filed an application for disability insurance benefits (DIB) with the Social Security Administration, alleging disability beginning on December 7, 2010. (Administrative Record (AR) 132-35.) The Commissioner denied the application initially and on reconsideration. (108-116.) Plaintiff made a timely request for a hearing before an administrative law judge (ALJ). (AR 117-122.) On March 13, 2012, Plaintiff, represented by

27

28

    [1] Refers to court's docket number.

    [2] These documents are identical.

1   counsel, appeared and testified before the ALJ. (AR 68-105.) A vocational expert (VE) also

2   testified. (AR 97-103.) The ALJ issued a written decision on March 22, 2012, finding Plaintiff

3   not disabled. (AR 26-36.) Plaintiff appealed and the Appeals Council denied review. (AR 4-10.)

4   Thus, the ALJ's decision became the final decision of the Commissioner.

5        Plaintiff now appeals the decision to the district court. Plaintiff argues that the ALJ erred

6   by failing to give specific and legitimate reasons for rejecting the opinions of Plaintiff's treating

7   physician, Dr. Michelle Kiser, that Plaintiff was limited to jobs where she was only on her feet

8   four hours a day, and that Plaintiff would be required to be absent from work four or more times

9   per month. In addition, Plaintiff argues that the ALJ erred in failing to articulate specific, clear

10  and convincing reasons for finding Plaintiff less than credible.

11       Conversely, the Commissioner argues that the ALJ did set forth sufficient reasons for

12  rejecting Dr. Kiser's opinions because the ALJ highlighted that Dr. Kiser's opinions regarding

13  Plaintiff's ability to function were inconsistent or unsupported by objective medical findings. In

14  addition, the Commissioner contends that the ALJ articulated sufficient reasons for finding

15  Plaintiff less than credible because her allegations of disability were unsupported by objective

16  clinical findings, her symptoms improved with treatment, and medication effectively addressed

17  her issues.

18                          **II. STANDARD OF REVIEW**

19       The court must affirm the ALJ's determination if it is based on proper legal standards and

20  the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec.*

21  *Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is

22  'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

23  reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-

24  24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

25       To determine whether substantial evidence exists, the court must look at the record as a

26  whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*,

27  740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may

28  not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*,

759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## III. DISCUSSION

### A. Five-Step Sequential Process

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §  1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review

1   the claim. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4); *see also Barnhart v. Thomas*, 540

2   U.S. 20, 24 (2003). "'The burden of proof is on the claimant at steps one through four, but shifts

3   to the Commissioner at step five.'" *Garrison*, 759 F.3d at 1011 (quoting *Bray v. Comm'r of Soc.*

4   *Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)).

5       In the first step, the Commissioner determines whether the claimant is engaged in

6   "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied.

7   20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant

8   is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

9       The second step requires the Commissioner to determine whether the claimant's

10  impairment or a combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and

11  § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits

12  the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are

13  "the abilities and aptitudes necessary to do most jobs[,]" which include:

14      (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling,
        reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking;
15      (3) Understanding, carrying out, and remembering simple instructions; (4) Use of
        judgment; (5) Responding appropriately to supervision, co-workers and usual
16      work situations; and (6) Dealing with changes in a routine work setting.

17  20 C.F.R. § 404.1521 and § 416.921. If a claimant's impairment is so slight that it causes no

18  more than minimal functional limitations, the Commissioner will find that the claimant is not

19  disabled. 20 C.F.R.§ 404.1520(a)(4)(ii), (c) and 416.920(a)(ii). If, however, the Commissioner

20  finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

21      In the third step, the Commissioner looks at a number of specific impairments listed in 20

22  C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the

23  impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R.

24  § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed

25  Impairments are severe enough to preclude any gainful activity, regardless of age, education, or

26  work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of

27  the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed

28  disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is

severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(b)(1).

In making this determination, the Commissioner assesses the claimant's "residual functional capacity" (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such

individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).[3]

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 689 (9th Cir. 2009).

**B. ALJ's Findings in this Case**

In the present case, the ALJ applied the five-step sequential evaluation process and found, at step one, that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 7, 2010. (AR 31.)

At step two, the ALJ found it was established Plaintiff suffered from the following severe impairment: status post cholecystectomy, and pancreatic divisum. (AR 31.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 31.)

At step four, the ALJ found that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except she should work in proximity to a restroom and should be

---

[3] "The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin*., 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

1   limited to jobs with simple instructions. (AR 32.) The ALJ then concluded, based on the VE's

2   testimony, that Plaintiff was capable of performing past relevant work as a courier.

3         The ALJ made an alternative finding, at step five, that given Plaintiff's age, education,

4   work experience and RFC, other jobs exist in significant numbers in the national economy that

5   Plaintiff can also perform including counter clerk (DOT 249.366-010), hostess (DOT 349.667-

6   014), and housekeeper (DOT 323.687-014). (AR 35-36.)

7   **C. Dr. Kiser's Opinions**

8       **1. Standard**

9         A claimant must establish disability as a result of "anatomical, physiological, or

10   psychological abnormalities which are demonstrable by medically acceptable clinical and

11   laboratory diagnostic techniques." 20 C.F.R. § 404.1527(a)(1). Evidence of this may include

12   medical opinions which are "statements from physicians and psychologists or other acceptable

13   medical sources that reflect judgments about the nature and severity of [the claimant's]

14   impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the

15   claimant] can still do despite the impairment(s), and [the claimant's] physical or mental

16   restrictions." 20 C.F.R. § 404.1527(a)(2). Medical opinions are considered with other relevant

17   evidence. 20 C.F.R. § 404.1527(b).

18         All medical opinions are to be evaluated by the ALJ. 20 C.F.R. § 404.1527(c). "'In

19   disability benefits cases...physicians may render medical, clinical opinions, or they may render

20   opinions on the ultimate issue of disability—the claimant's ability to perform work.'" *Garrison*,

21   759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). The court

22   "'distinguish[es] among the opinions of three types of physicians: (1) those who treat the

23   claimant (treating physicians); (2) those who examine but do not treat the claimant (examining

24   physicians); and (3) those who neither examine nor treat the claimant (nonexamining

25   physicians).'" *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Treating

26   physicians' opinions are generally given more weight than examining or non-examining

27   physicians. *Id*. In addition, "the opinion of an examining physician is entitled to greater weight

28   than that of a non-examining physician." *Id*. (citing *Ryan*, 528 F.3d at 1198). "The weight

afforded a non-examining physician's testimony depends on the degree to which [he or she] provide[s] supporting explanations for [his or her] opinions." *Id.* (internal quotation marks omitted).

Treating provider opinions are generally given "controlling weight" "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). This is so long as the treating opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

"The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Magallanes*, 881 F.2d at 751 (citations omitted).  "[T]he ALJ need not accept a treating physician's opinion which is 'brief and conclusory in form with little in the way of clinical findings to support [its] conclusion.'" *Id.* (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)). "To reject the uncontroverted opinion of a claimant's physician, the ALJ must present clear and convincing reasons for doing so." *Id.* (citations omitted).

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d at 1198). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings.'" *Magallanes,* 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725).

- 8 -

1

2          **2. Analysis**

3              Plaintiff's chief complaint is that she is disabled due to severe and chronic abdominal

4     pain.

5              The ALJ noted that Dr. Kiser, Plaintiff's primary care physician, completed a treating

6     physician questionnaire form in March 2012. (AR 33.) Dr. Kiser indicated she treated Plaintiff

7     three to four times a year since 2005 for her primary complaint of chronic abdominal pain, and

8     noted the diagnosis of pancreatic divisum and a history of stenting of the bile duct. (AR 33.)

9     Dr. Kiser reported Plaintiff had anxiety and suffered from mild mental retardation, but was

10    capable of tolerating low stress jobs. (AR 33.) Dr. Kiser further opined that Plaintiff could stand

11    and or walk four hours and sit six hours in an eight-hour work day, could lift and or carry twenty

12    pounds occasionally and ten pounds frequently, would need unscheduled breaks and would

13    likely be absent from work more than four days per month. (AR 33-34.) Plaintiff contends that

14    the ALJ failed to set forth specific and legitimate reasons for rejecting Dr. Kiser's opinions

15    regarding the stand/walk limitations and the likelihood of being absent four or more days, but

16    then focuses only on Dr. Kiser's opinion that Plaintiff would likely be absent from work four or

17    more days per month.[4] The court disagrees with Plaintiff's position.

18              With respect to Dr. Kiser's opinions, the ALJ explained:
              Dr. Kiser is the claimant's primary care physician, and her chief role in the
19            treatment of the claimant's complaints of abdominal pain was to prescribe the
              claimant narcotic pain medication every two to three months (Exhibit 1F, 9F).
20            However, Dr. Nason, the claimant's treating gastroenterologist, concluded the
              claimant's abdominal pain was not from the pancreatic divisum, but was of
21            unclear etiology. I accord partial weight to Dr. Kiser's opinion. The medical
              evidence of record supports Dr. Kiser's opinion the claimant is capable of light
22            work activity, and further nonexertional limitations are appropriate for simple or
              detailed work, given the report of anxiety and mild mental retardation. However,
23            Dr. Kiser's opinion the claimant would need unscheduled breaks and would be
              absent from work more than four times per month appear to be based solely on
24            the claimant's subjective complaints, and is not supported by the clinical and
25            objective medical evidence of record.

26

27    _____

28        [4] Notably, the ALJ pointed out that Plaintiff testified at the hearing that she had no limitations with respect
      to walking, standing and sitting; therefore, it makes sense that Plaintiff would not focus on Dr. Kiser's opinion
      regarding any limitation in this regard as it is not supported by her own testimony.

1   (AR 34.) The ALJ pointed out that Plaintiff's history of complaints of abdominal pain were well

2   documented, along with extensive diagnostic and laboratory testing and examinations and

3   evaluations, but her physicians were unable to explain the cause of her asserted pain. (AR 32.)

4   Plaintiff had over 100 emergency room visits, seeking narcotic pain medication for her

5   complaints of pain. (AR 32.) An August 2010 CT revealed a pancreatic divisum, but was

6   otherwise unremarkable. (AR 32.)

7   She had an upper endoscopic ultrasound in October 2010, which revealed moderate bile

8   acid associated with gastritis involving the stomach, but there were no masses, cysts or

9   calcifications, and the liver was normal. (AR 33.) In January 2011, Plaintiff's treating

10  gastroenterologist, Dr. Daniel Nason, performed an evaluation and Plaintiff had no complaints of

11  diffuse tenderness when the abdomen was examined. (AR 33.) Dr. Nason did not believe the

12  pain was related to the pancreatic divisum, sphincter of Oddi dysfunction or was nerve related.

13  (AR 33.) When he evaluated her again in February 2011, he reported that the etiology of her pain

14  was unclear. (AR 33.)

15  When she reported to the emergency room for complaints of abdominal pain and

16  requested narcotic pain medication, her abdominal examination was normal. (AR 33.) As stated

17  above, she went to the emergency room over 100 times which typically resulted in normal

18  findings on clinical, diagnostic and laboratory examination. (AR 33.) The possibility of

19  symptoms of narcotic withdrawal was raised as a possible explanation. (AR 33.) The State

20  agency medical consultant, Dr. Mayenne Karelitz, opined Plaintiff was capable of a full range of

21  light work activity. (AR 33.)

22  As such, the court finds the ALJ did in fact set forth clear and convincing reasons for

23  rejecting Dr. Kiser's opinions as they were unsupported by the record as a whole.

24  **D. Plaintiff's Credibility**

25  **1. Standard**

26  "[A] claimant's credibility becomes important at the stage where the ALJ is assessing

27  residual functional capacity, because the claimant's subjective statements may tell of greater

28  limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th

- 10 -

1    Cir. 2001) (citing SSR 96-7p (1996)).  Thus, a claimant's credibility is often crucial to a finding

2    of disability.  The ALJ is responsible for determining credibility.  *Meanel v. Apfel*, 172 F.3d

3    1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 750; *see also Lingenfelter v. Astrue*, 504

4    F.3d 1028, 1035-36 (9th Cir. 2007).

5         In general, when deciding to accept or reject a claimant's subjective symptom testimony,

6    an ALJ must engage in two steps: an analysis under *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir.

7    1986) (the "*Cotton* test"), and an analysis of the credibility of the claimant's testimony regarding

8    the severity of his or her symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *see*

9    *also* 20 C.F.R. § 404.1529 (adopting two-part test).

10        First, under the *Cotton* test, a claimant who alleges disability based on subjective

11   symptoms "must produce objective evidence of an underlying impairment 'which could

12   reasonably be expected to produce pain or other symptoms alleged.'" *Bunnell v. Sullivan*, 947

13   F.2d 341, 344 (9th Cir. 1991) (en banc) (citing 42 U.S.C. § 423(d)(5)(A)); *see also  Berry v.*

14   *Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010)*; Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th

15   Cir. 2007). The test "imposes only two requirements on the claimant: (1) [he or] she must

16   produce objective medical evidence of an impairment or impairments; and (2) [he or] she must

17   show that the impairment or combination of impairments *could reasonably be expected to* (not

18   that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (emphasis

19   original); *see also* 20 C.F.R. § 404.1529(a)-(b).

20        "Second, if the claimant meets the first test, and there is no evidence of malingering, the

21   ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

22   specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (internal

23   quotation marks and citation omitted); *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574

24   F.3d 685, 693 (9th Cir. 2009). "This is not an easy requirement to meet: 'The clear and

25   convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759

26   F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

27        An ALJ's credibility findings are entitled to deference if they are supported by substantial

28   evidence and are "sufficiently specific to allow a reviewing court to conclude the adjudicator

1  rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a

2  claimant's [symptom] testimony.'" *Bunnell*, 947 F.2d at 345 (quoting *Elam v. Railroad*

3  *Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991)). "General findings are insufficient; rather,

4  the ALJ must identify what testimony is not credible and what evidence undermines the

5  claimant's complaints." *Berry*, 622 F.3d at 1234 (internal quotation marks and citation omitted).

6        An ALJ may consider various factors in assessing the credibility of the allegedly

7  disabling subjective symptoms, including: daily activities; the location, duration, frequency, and

8  intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage,

9  effectiveness, and side effects of any medication taken to alleviate symptoms; treatment, other

10 than medication, received for relief of symptoms; any measures a claimant has used to relieve

11 symptoms; and other factors concerning functional limitations and restrictions due to symptoms.

12 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

13       When analyzing credibility, an ALJ may properly consider medical evidence in the

14 analysis; however, the ALJ may not reject subjective pain testimony "on the sole ground that it is

15 not fully corroborated by objective medical evidence[.]" *Rollins v. Massanari*, 261 F.3d 853, 857

16 (9th Cir. 2001); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004)

17 (holding ALJ properly determined credibility where claimant's testimony was contradictory to

18 and unsupported by objective medical evidence).

19       **2. Analysis**

20       The ALJ stated the following regarding Plaintiff's testimony:

21       The claimant testified at the hearing as a witness on her own behalf. She last
         worked at a hospital as a courier. The heaviest weight lifted was 10 pounds. She
22       stopped working in 2010 when her department was eliminated. She said she spent
         her days looking for employment. She also watched television, and would spend
23       time with her mother on weekends. She could do her own cleaning and shopping.
         She never had a driver's license. She had a pancreatic divisum and pancreatitis,
24       and her gallbladder was removed in 2007. She could not work because of
         abdominal pain that sometimes radiated to her back, nausea, vomiting, and
25       occasional diarrhea. She said she had flares two to three times per week, and
         would go to the emergency room. She took Percocet, which relieved her
26       symptoms, but she got tired and dizzy as a side effect of the medication. She had
         four temporary bilateral stents placed. She said she has no limitations in walking,
27       standing, and sitting, and could only lift 10 pounds.

28

1   (AR 34.)

2          Here, the ALJ found that Plaintiff's medically determinable impairment could reasonably

3   be expected to cause the alleged symptoms, but found that Plaintiff's statements concerning the

4   intensity, persistence and limiting effects of the symptoms were not credible to the extent they

5   were inconsistent with the RFC assessment. (AR 34.) Instead, the ALJ found that the RFC for a

6   narrow range of light work activity was consistent with the medical opinions and was supported

7   by the clinical and objective medical evidence of record.

8          This sentence should not be viewed in a vacuum, but together with the ALJ's other

9   findings at this step. In addition to finding that Plaintiff's symptom testimony was not consistent

10  with objective medical evidence in the record, the ALJ also highlighted that Plaintiff went to the

11  ER over 100 times seeking pain medication and it was raised that narcotic withdrawal could have

12  been the cause of her otherwise unexplained abdominal pain. As a result, the court finds the ALJ

13  set forth specific, clear and convincing reasons for finding Plaintiff less than credible.

14         Even if it could be said that the ALJ rejected Plaintiff's testimony on the sole ground that

15  it was not fully corroborated by objective medical evidence, the court finds this error harmless.

16  *See Molina v. Astrue*, 674 F.3d 1104, 1105 (9th Cir. 2012). Errors in social security cases are

17  harmless if they are "inconsequential to the ultimate nondisability determination" which is the

18  case when a reviewing court "can confidently conclude that no reasonable ALJ, when fully

19  crediting the testimony, could have reached a different disability determination." *Stout v.*

20  *Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

21         Even if Plaintiff's testimony were credible, the court is confident that any other ALJ

22  would have reached the same nondisability determination. Plaintiff testified that she had flare

23  ups two to three times a week for which she went to the emergency room. It is true that Plaintiff

24  went to the emergency room over 100 times, requesting narcotic pain medication, but by and

25  large no doctor who examined or treated her could determine the etiology of her abdominal pain

26  and her laboratory and diagnostic tests were generally unremarkable and did not render an

27  explanation for her pain. She testified that Percocet relieved her symptoms, but it made her

28  dizzy, yet the evidence reveals that she continued to request narcotic pain medication to alleviate

1    her pain. Therefore, the court finds the ALJ's determination should be affirmed on this additional

2    basis.

3                                    **IV. CONCLUSION**

4          After carefully reviewing the record as a whole, the district court should find there is

5    substantial evidence to support the ALJ's determination and the ALJ's decision should be

6    affirmed.

7                                    **V. RECOMMENDATION**

8          **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and/or Remand

9    (Doc. # 15) be **DENIED.**

10         **IT IS FURTHER RECOMMENDED** that the Commissioner's Cross-Motion to Affirm

11   (Doc. # 19) be **GRANTED** and that the decision of the ALJ be **AFFIRMED**.

12         The parties should be aware of the following:

13         1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local

14   Rules of Practice, specific written objections to this Report and Recommendation within fourteen

15   days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and

16   Recommendation" and should be accompanied by points and authorities for consideration by the

17   District Court.

18         2. That this Report and Recommendation is not an appealable order and that any notice of

19   appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

20   until entry of the District Court's judgment.

21    DATED:  July 16, 2015

22

23                                    _____
                                      WILLIAM G. COBB
24                                    UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                                      - 14 -